# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____

| | |
|---|---|
| LAFONTE COMMERCE SA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 22-CV-2695 |
| ) | |
| CONSOLIDATED MILL SUPPLY, INC., ) | |
| ) | |
| Respondent. ) | |

_____)

**RESPONDENT CONSOLIDATED MILL SUPPLY, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
DISMISS/OPPOSITION TO LAFONTE COMMERCE SA'S PETITION TO
RECOGNIZE AND ENFORCE FOREIGN ARBITRATION AWARD AND,
ALTERNATIVELY, IN SUPPORT OF MOTION TO STAY THIS CIVIL ACTION**

Thomas P. Cimino, Jr., Bar No. 06195940
Zachary J. Watters, Bar No. 6310675
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
tcimino@vedderprice.com
zwatters@vedderprice.com

Mark A. Schiavo
Anne Marie Aaronson
Benjamin S. Teris
DILWORTH PAXSON LLP
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
Telephone: (856) 675-1978
mschiavo@dilworthlaw.com
bteris@dilworthlaw.com
aaronson@dilworthlaw.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. v

I.     INTRODUCTION ................................................................................................ 2

II.    FACTS ................................................................................................................. 3

   A.   The Parties .................................................................................................. 3

     1.   CMS ................................................................................................ 3

     2.   IMH/Lafonte ................................................................................... 3

   B.   The Parties' Business Relationship ............................................................ 5

   C.   The Arbitration ........................................................................................... 6

   D.   The Award .................................................................................................. 7

   E.   The Ongoing Appellate Process in Switzerland ........................................ 8

III.   ARGUMENT ...................................................................................................... 10

   A.   The Petition Should Be Denied ................................................................. 11

     1.   Legal Standard ............................................................................... 11

     2.   The Sole Arbitrator's Refusal to Consider Evidence of Amounts Owed to CMS under ████████████████████, Which He Found to be Binding, Is Contrary to the Procedural Fairness Requirements of the Swiss Rules and Swiss International Private Law Act ........................... 11

     3.   Recognition and Enforcement of the Award is Contrary to US Public Policy ...... 13

   B.   Alternatively, This Court Must Stay This Civil Action Pending Resolution Of The Appeals Initiated By Both Parties At The Seat Of Arbitration ........................... 15

     1.   Factor 1: general objectives of arbitration ................................... 17

     2.   Factor 2: status of foreign proceedings and estimated time for resolution ........... 19

     3.   Factor 3: whether the Award will receive greater scrutiny by the Swiss Court under a less deferential standard of review ................................. 19

     4.   Factor 4: the characteristics of the Swiss proceedings ................ 20

**5.    Factor 5: balance of potential hardships** ................................................................. **22**

**6.    Factor 6: other considerations** ................................................................................ **24**

**IV.    CONCLUSION** .................................................................................................................. **25**

122829483-2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosetti v. Oregon Cath. Press,*
    458 F. Supp. 3d 1013 (N.D. Ind. 2020) ................................................................4

*Aperture Softward GmbH v. Avocent Huntsville Corp.,*
    No. 5:14-cv-00211-JHE, 2015 WL 12838967 (N.D. Ala. Jan. 5, 2015) ...........................17, 20

*Matter of Arb. of Certain Controversies Between Getma Int'l & Republic of
    Guinea,*
    191 F. Supp. 3d 43 (D.D.C. 2016) ......................................................................1

*In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.,*
    528 F. Supp. 2d 340 (S.D.N.Y. 2007)................................................................20

*In re Arbitration of Certain Controversies Between Getma Int'l & Republic of
    Guinea,*
    142 F.Supp.3d 110 (D.D.C. 2015) .................................................................20, 23

*CC/Devas (Mauritius) Ltd. v. Republic of India,*
    No. 1:21-CV-106, 2022 WL 873620 (D.D.C. (Slip Copy) March 24, 2022).........................24

*China Nat. Chartering, Corp. v. Pactrans Air & Sea, Inc.,*
    No. 09 C 7629, 2012 WL 6055299 (N.D. Ill. Dec. 6, 2012) ...............................1, 11

*CP Construction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of
    Ghana,*
    578 F.Supp.2d 50 (D.D.C. 2008) ....................................................................18

*DRC, Inc. v. Republic of Honduras,*
    774 F.Supp. 2d 66 (D.D.C. 2011) ...................................................................22

*Europcar Italia, S.P.A. v. Maiellano Tours,*
    156 F.3d 310 (2d Cir. 1998)..................................................................... *passim*

*Generica Ltd. v. Pharmaceutical Basics, Inc.,*
    125 F.3d 1123 (7th Cir. 1997) .................................................................11, 12

*Girassol v. Lumbermens Mut. Cas. Co.,*
    No. 04 C 7731, 2005 WL 947126 (N.D. Ill. Apr. 12, 2005)..............................16, 18

*Gretton Ltd. v. Republic of Uzbekistan,*
    No. 18-1755, 2019 WL 464793 (D.D.C. Feb. 6, 2019).............................18, 19, 21

iii

*Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*,
314 F. Supp. 3d 95 (D.D.C. 2018) .......................................................................1, 17, 19, 21

*Higgins v. SPX Corp.*,
No. 05-CV-846, 2006 WL 1008677 (W.D. Mich. Apr. 18, 2006) ........................................21

*Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*,
763 F.2d 34 (1st Cir. 1985) ................................................................................................12

*InterDigital Communications, Inc. v. Huawei Investment & Holding Co., Ltd.*,
166 F.Supp.3d 463 (S.D.N.Y. 2016) ....................................................................................17

*Iran Aircraft Indus. v. Avco Corp.*,
980 F.2d 141 (2d Cir. 1992) ................................................................................................12

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*,
No. 05-CV-0423, 2005 WL 3533128 (W.D. Pa. Dec. 22, 2005) ....................................18, 24

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
397 F.Supp.3d 34 (D.D.C. 2019) ........................................................................................17

*Mathews v. Eldridge*,
424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ..............................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614,625 (1985) ....................................................................................................18

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier*,
508 F.2d 969 (2d Cir. 1974) ................................................................................................14

*Petrof, Spol.S.R.O. v. Geneva Int'l Corp.*,
No. 07-C-7218, 2009 WL 10742090 (N.D.Ill. Jan. 7, 2009) ...........................................16, 22

*Polimaster Ltd. v. RAE Sys., Inc.*,
623 F.3d 832 (9th Cir. 2010) ..............................................................................................18

*Sonera Holding BV v. Cukurova Holding AS*,
895 F.Supp. 2d 513 (S.D.N.Y. 2012) ..................................................................................12

*Tempo Shain Corp. v. Bertek, Inc.*
120 F.3d 16 (2d Cir. 1997) ..................................................................................................12

*The Ministry of Defense and Support for the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*,
655 F.3d 1091 (9th Cir. 2011) ............................................................................................14

iv

**Statutes**

9 U.S.C. § 207 ......................................................................................................... passim

182(3) Swiss International Private Law Act ............................................................ passim

FAA § 10(a)(3) ............................................................................................................12

Federal Arbitration Act Chapter 2, 9 U.S.C. §201, *et seq.* (2012)..................................1

**Rules**

FRCP 7.1 ................................................................................................................. 2, 4

**Other Authorities**

https://sanctions.nazk.gov.ua/en/sanction-person/8785/ ...................................... 4, 5, 14

https://www.live-feeds.com/evgeny-zubitsky-was-awarded-the-commendation-of-
the-president-of-the-russian-federation-metallurgy-news/ ...................................... 3

https://www.metallics.org/pig-iron.html ........................................................................ 3

https://www.seco.admin.ch/dam/seco/de/dokumente/Aussenwirtschaft/Wirtschaft
sbeziehungen/Exportkontrollen/Sanktionen/Verordnungen/Russland,%20Ukra
ine/situation_ukraine_2022-06-
10.pdf.download.pdf/Situation%20in%20der%20Ukraine_2022-06-10.pdf;
https://sanctions.nazk.gov.ua/en/sanction-person/4032/....................................... 4

https://www.state.gov/united-with-ukraine/ ......................................................... 14, 15

v

Respondent Consolidated Mill Supply, Inc. ("**CMS**"), through its undersigned counsel, hereby submits this Memorandum of Points and Authorities ("**MPA**") in Support of Its Mtion to Dismiss/Opposition to Petitioner Lafonte Commerce SA's ("**Lafonte**") Petition to Recognize and Enforce Foreign Arbitration Award (the "**Petition**") pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A. S. No. 6997, implemented by Chapter 2 of the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §201, *et seq.* (2012) (the "**Convention**") and in support of its request to Stay this Civil Action pending resolution of appeals proceeding at the seat of the arbitration.

Recognition and enforcement of the Award (defined below) should be denied on public policy grounds and because any amount ultimately owed by CMS to Lafonte following resolution of the pending appeals may be subject to set-off under the same Award.

Alternatively, should this Court determine not to dismiss the Petition, Respondent moves this Court pursuant to Article VI of the Convention to stay this Civil Action pending the conclusion of the appeals process initiated by both parties. In those appeals, Lafonte and CMS both seek to alter and/or set-aside a portion of the Final Award in Swiss Rules Case No. 300498-2020 (the "**Award**"), which underlies the Petition filed by Lafonte before this Court.

In addition to this MPA, CMS submits and incorporates the Declarations of Mark A. Schiavo, Esq. and Dr. Stefanie Pfisterer, each dated June 28, 2022.[1]

---

[1] Similar pleadings as this, styled as motions to dismiss/opposition to petition to enforce arbitration award have been permitted in this District. *See, e.g.*, *China Nat. Chartering, Corp. v. Pactrans Air & Sea, Inc.*, No. 09 C 7629, 2012 WL 6055299 (N.D. Ill. Dec. 6, 2012); *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*, 314 F. Supp. 3d 95, 102 (D.D.C. 2018); *Matter of Arb. of Certain Controversies Between Getma Int'l & Republic of Guinea*, 191 F. Supp. 3d 43, 45 n.1 (D.D.C. 2016). When Courts have considered these filings, they have permitted declarations, with exhibits, to be filed in support or opposition to the petition. *Id.* at 46-47. Nonetheless, most evidence submitted herewith was either included with Lafonte's filings or is a matter of public record.

1

## I.     **INTRODUCTION**

Sanctioned Russian oligarchs should not be permitted to abuse the US legal system to the detriment of US companies. But that is exactly what Evgeny Zubitskiy, Vladimir Putin's hand-picked pig iron oligarch, seeks to do here. As can be expected, Zubitskiy does not act in the open to export pig iron from Russia, but pulls the strings from the shadows. He does not use Industrial Metallurgical Holding ("**IMH**"), the company for which he is listed as president, to export pig iron. He uses his Swiss trading company, the Petitioner, Lafonte. As indicated in Lafonte's FRCP 7.1 Disclosure, Alina Zubitskaya, Zubitskiy's daughter (or spouse, as stated in certain public documents) is the purported sole beneficial owner of Lafonte. Make no mistake, Lafonte is a shell company used to sell IMH products internationally.  It is undisputed Ms. Zubitskaya has no role managing Lafonte.  International efforts are also underway to sanction Ms. Zubitskaya.

The Award makes clear that even though CMS was found to owe Lafonte money, Lafonte also owes a significant amount of money to CMS (something Lafonte attempts to hide in a footnote in its pleadings). Zubitskiy seeks to take advantage of US law to force CMS to pay Lafonte immediately, before the amount owed by Lafonte increases as a result of the Swiss appeals and while refusing to pay CMS the amount currently owed by Lafonte.  Zubitskiy and Lafonte have no intention of ever paying CMS. Rather, they want to take CMS's money and run—money that will in all likelihood go to fund Putin's war in Ukraine.

As set forth below, grounds exist under Article V of the Convention upon which this Court should deny the Petition. Alternatively, if the Court is not inclined to deny the Petition, at the very least, under Article VI of the Convention the Court should stay this Civil Action pending the conclusion of the parties' appeals in Switzerland.

2

## II.  FACTS

### A.  The Parties

#### 1.  CMS

CMS, a trading company based in Palatine, Illinois, facilitates the sale of pig iron[2] from several of the largest foreign pig iron producers to its customers in the US, which allows CMS to provide a consistent supply of pig iron to steel mills and foundries in the US.  Dkt. No. 1, Lafonte Petition, Exhibit A, Tab 1, Award at ¶ 125.

#### 2.  IMH/Lafonte

Lafonte is the Swiss trading arm of IMH, a Russian vertically integrated business that, among other things, produces merchant pig iron and coke.  Declaration of Mark A. Schiavo, Esq. ("**Schiavo Dec.**"), Ex. A, PJSC KOKS, Auditor's Report 2020, pp. 5, 36 [Exhibit pp. 15, 46]. Public Joint Stock Company KOKS ("**PJSC KOKS**") is the publicly traded parent company of IMH.  *Id.* at 5 [Exhibit p. 15].  Evgeny Zubitskiy is a co-owner, Chairman of the Board of Directors and CEO of IMH as well as a shareholder of KOKS Group. *Id.* The KOKS Group produces a substantial share of Russia's pig iron and other raw materials. *Id.*

Zubitskiy has close ties to the Kremlin. Putin awarded him the "commendation of the Russian Federation" in September 2021. *See* https://www.live-feeds.com/evgeny-zubitsky-was-awarded-the-commendation-of-the-president-of-the-russian-federation-metallurgy-news/. (Schiavo Dec., Ex. B). Citing his Kremlin relationship, Switzerland and the EU sanctioned Zubitskiy, reasoning that he (and his KOKS Group) operates "in an economic sector providing a substantial source of revenue to the Government of the Russian Federation." *See*

---

[2] Pig iron is made by smelting iron ore in blast furnaces.  Pig iron is generally used by steel mills, who convert it into steel products.  *See* https://www.metallics.org/pig-iron.html .

https://www.seco.admin.ch/dam/seco/de/dokumente/Aussenwirtschaft/Wirtschaftsbeziehungen/E xportkontrollen/Sanktionen/Verordnungen/Russland,%20Ukraine/situation_ukraine_2022-06-10.pdf.download.pdf/Situation%20in%20der%20Ukraine_2022-06-10.pdf; https://sanctions.nazk.gov.ua/en/sanction-person/4032/ (Schiavo Dec., Ex. C).[3]

Public records further establish IMH's/KOKS' control over Lafonte. As stated in Lafonte's Rule 7.1 Disclosure Statement, Alina Zubitskaya is the purported sole beneficial owner of Lafonte. Dkt. No. 9. During the arbitration, Lafonte claimed that Zubitskaya is Zubitskiy's daughter. Other sources indicate that she is his wife. The Ukrainian Government's sanctions list describes Zubitskaya as: "Family member of Yevgeny Borisovich ZUBITSKIY, an individual engaged in commercial activities in sectors of the economy that provide a high revenue part of the budget of the Russian Federation, which is responsible for the war in Ukraine, that is, it is a significant source of income for the conduct of the war[.]" *See* https://sanctions.nazk.gov.ua/en/sanction-person/8785/ (Schiavo Dec., Ex. D). The Auditor's Report on the 2020 Financial Statements of PJSC KOKS ("**Auditor's Report**") lists a substantial loan in the amount of RUB 274 million (approximately 5.04 million USD) granted by KOKS Group to Lafonte. Schiavo Dec., Ex. A, p. 36 [Exhibit p. 46]. Moreover, according to the official documents of KOKS Group, Lafonte is a "related party." *Id*. The term is "directed to the substance" - i.e. materially, which means anyone who is under the control of PJSC KOKS (or its beneficial owner, Zubitskiy). *Id.* at p. 34 [Exhibit p. 44].[4] Further, IMH Capital D.A.C., a KOKS Group company, issued a USD 350 million bond in September 2020 in connection with a loan to PJSC KOKS. Schiavo Dec., Ex. E, Excerpts From Listing Particulars. The prospectus relating to these bonds is referred to as the "**Listing**

---

[3] It is proper for the Court to consider these and other cited government websites, as it has been consistently held that a court "may take judicial notice of public record information obtained from an official government website." *Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013, 1017 (N.D. Ind. 2020) (collecting cases).

4

**Particulars**". *Id.* Per the Listing Particulars, the KOKS Group conducts a substantial part of its pig iron exports through Lafonte, which is described as a "related party[,]" *Id.* at p. 23 [Exhibit p. 19]:

> ***The Group depends on a relatively limited number of large customers***
> A substantial part of the Group's merchant pig iron exports are exported via Lafonte, a related party. In the six months ended 30 June 2020 and the year ended 31 December 2019, Lafonte exported 72.9 per cent. [sic] and 71.8 percent, respectively, of the Group's merchant pig iron export sales

The particulars further indicate that KOKS' "export operations are carried out through a trader Lafonte Commence SA." *Id.* at p. 71 [Exhibit p. 22].

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████ Dkt. No. 1, Lafonte Petition, Exhibit A, Tab 1, Award at ¶¶ 563, 567.

In short, Lafonte is controlled by sanctioned Russian oligarch Evgeny Zubitskiy, whose profits support Putin's war in Ukraine.

### B. The Parties' Business Relationship

The parties agreed in their 2018 Contract, Contract 2018CMS/08 (the "**Contract**"), that any disputes thereunder would be "governed by and constructed in accordance with Swiss Law." Dkt. No. 1 Lafonte Petition, Exhibit A, Tab 2 at Article 12.1. "Any dispute, controversy or claim arising out of, or in relation to, [the Contract] … shall be resolved by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution…." *Id.* at Article 12.2. "The decision of the arbitration shall be final and binding upon both Parties." *Id.* at Article 12.3. Consistent with the Contract and the parties' arbitration concession regarding related business disputes, the Sole Arbitrator rendered the Award, applying Swiss law, in Switzerland.

5

For approximately fifteen years, CMS had been contracted by IMH to sell pig iron to CMS's US customer base - first through IMH's Swiss trading company, Alpicom SA and finally through Lafonte, which was formed by Evgeny Zubitskiy to replace Alpicom following certain Zubitskiy family matters. Dkt. No. 1 Lafonte Petition, Exhibit A, Tab 1, Award at ¶¶ 131-35.

The parties' business dealings through October of 2019 are set forth in great detail in the arbitration pleadings. Thereafter, both parties asserted claims against each other under the Contract and discontinued their business relationship. *Id.* at ¶¶ 138-42.

### C. The Arbitration

On February 13, 2020, Lafonte initiated arbitration proceedings under the Swiss Rules of International Arbitration, June 2012 edition ("**Swiss Rules**") against CMS. *Id.* at ¶ 6. In its Notice of Arbitration, Lafonte claimed that CMS should be ordered to pay USD 7,500,000, plus interest. *Id.* at ¶ 111.

On April 23, 2020, CMS filed its Answer to the Notice of Arbitration and Statements of Set-Off Defense and Counterclaims (*Id.* at ¶ 11), requesting that Lafonte's claim be dismissed because the claim had been satisfied through CMS's setoffs. *Id.* at ¶ 162. CMS's asserted counterclaim resulted from the portion of the parties' Contract (the "**CMS-Lafonte BRS Contract**") governing resales of pig iron to Big River Steel ("**BRS**"). *Id.* at ¶¶ 304-60. ███

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

6

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ Dkt. No. 1, Exhibit A, Tab 1, Award at ¶¶ 309 et seq., 752 et seq.

On January 7, 2022, the parties filed their closing submissions (Post-Hearing Briefs).

### D.  The Award

On March 31, 2022, the Sole Arbitrator issued the Award.  In short, the Sole Arbitrator ordered as follows:

> (i) [CMS] is ordered to pay to [Lafonte] an amount of USD 7'500'000 plus interest at a rate of 1 month LIBOR +10% p.a. as from 29 January 2020.
> **(ii) [Lafonte] is ordered to pay to [CMS] an amount of USD 2'479'630.66 plus 5% interest as from 8 October 2020.**
> (iii) The Arbitrator declares that [CMS's] termination of Contract 2018CMS/08 on 29 January 2020 was justified and effective.
> (iv) [CMS] is ordered to pay to [Lafonte] an amount of CHF 38'720 (compensation for arbitration costs).
> (v) [CMS] is ordered to pay to [Lafonte] the following amounts (compensation for party costs and expenses):
>     - CHF 471'580.40,
>     - USD 245'806.49,
>     - GBP 1'216, and
>     - EUR 454.59,
> (vi) All other claims are dismissed.

Dkt. No. 1 Lafonte Petition, Exhibit A, Tab 1, Award at ¶ 1078 (emphasis added).

The Award makes clear that, while CMS owes Lafonte on Lafonte's claims, Lafonte also owes CMS on CMS's counterclaim—specifically USD 2'479'630.66 plus 5%.  *Id.*

████████████████████████████████████████

████████████████████████████████████████

7

The Sole Arbitrator's reasoning violates the principle of contractual compliance because the Sole Arbitrator acknowledged the existence of a binding contract but refused to acknowledge the consequences thereof (the ensuing obligation to bear any loss from resales to ███ ).

### E.  The Ongoing Appellate Process in Switzerland

8

On May 16, 2022, pursuant to Art. 190 f. Swiss International Private Law Act (PILA) and Art. 77 Swiss Federal Supreme Court Act, CMS timely filed its appeal with the Swiss Federal Supreme Court I. civil division (the "**Swiss Court**") in Switzerland. Exhibit F, Declaration of Dr. Stefanie Pfisterer (the "**Pfisterer Dec.**"), ¶ 3. In its appeal, CMS seeks to set aside dispositive Award paragraphs (ii), (iv), (v) and (vi), with costs and compensation to be borne by Lafonte, due to the Sole Arbitrator violating CMS's right to be heard and violating the Ordre public.[5] In particular, CMS has appealed the Sole Arbitrator's failure to consider the evidence of the amount owed to CMS for the BRS price adjustment claim, resulting in significant inconsistencies within the Award. If CMS's appeal is successful, Lafonte would owe CMS millions of additional dollars plus compensation for fees and costs. CMS may seek a setoff of its obligation to Lafonte against the ultimate amount of the Award in favor of CMS.

It is anticipated that Lafonte's response to CMS's appeal will be due by September 2022. Pfisterer Dec. ¶ 12.

---

[5] In dismissing the entirety of CMS's price adjustment claim in the face of the evidence, the Sole Arbitrator violated CMS's right to be heard. The Award contains serious irregularities that require, at a minimum, adjustment on appeal. Moreover, for the resales where pricing was calculated differently from the contract formulae, the Sole Arbitrator simply dismissed those resales rather than applying the contract formulae and awarding Lafonte's contractual obligation to CMS.



Dismissal of CMS's ... violates CMS's right to be heard and is contrary to Swiss public policy.

The appeal proceedings are decided on the papers and there will be no hearing before the Swiss Court. Pfisterer Dec. ¶ 13.  After the response period concludes, the Swiss Court will decide the appeals. *Id.* CMS anticipates that the Swiss Federal Supreme Court will issue a ruling on the appeal of CMS by December 2022.  *Id.* ¶¶ 13, 16.

After the ruling is issued, if CMS's appeal is granted, the Swiss Court will set aside the Award and request the Sole Arbitrator revisit the amount owed by Lafonte to CMS under the CMS-Lafonte BRS Contract.

Lafonte also filed an appeal to the Award on May 16, 2022, seeking to set aside the portion of the Award granting relief to CMS and has asked the Swiss Court to suspend the portion of the Award granting relief to CMS pending the outcome of the appeal.  *See* Petition, n. 2.  CMS's response to Lafonte's appeal is due to be submitted on or before June 29, 2022. Pfisterer Dec. ¶ 15.

## III.    **ARGUMENT**

The outcome of the pending appeals could materially and significantly increase the amount owed by Lafonte to CMS.  Should this Court recognize and enforce the Award as currently rendered, CMS's (in fact, both parties') right under the Contract to have disputes proceed through the arbitration process would be denied or undercut. Moreover, recognition and enforcement of the Award will create the potential for inconsistent judgments and additional, potentially protracted, litigation in the event that Lafonte's obligations to CMS are substantially altered through the pending appeals - which CMS believes will be the case.

Even worse, by enforcing the Award, Lafonte could take the full amount presently awarded to it, while avoiding paying the millions of dollars it owes CMS pending appeal results.  The Court

10

should use its authority under Articles VI and V of the Convention to deny or, alternatively, stay this action pending the completion of the appeal process in Switzerland.

### A. The Petition Should Be Denied

#### 1. Legal Standard

It is undisputed that Lafonte's Petition is governed by the Convention, Convention Art. 1(1), (2); *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1129 (7th Cir. 1997), under which "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. *China Nat. Chartering, Corp. v. Pactrans Air & Sea, Inc.*, No. 09 C 7629, 2012 WL 6055299, at *2 (N.D. Ill. Dec. 6, 2012). Article V of the Convention sets forth the grounds upon which a Court may refuse to recognize an arbitral award, including, *inter alia*, where the arbitral procedure was not procedurally fair in accordance with the law of the country where the arbitration took place and "recognition or enforcement of the award would be contrary to the public policy" of the country where recognition and enforcement of the award is sought.[6] Convention, Article V. Applying those grounds here, the Court should deny the Petition.

#### 2. The Sole Arbitrator's Refusal to Consider Evidence of Amounts Owed to CMS under ████████████████████████, Which He Found to be Binding, Is Contrary to the Procedural Fairness Requirements of the Swiss Rules and Swiss International Private Law Act

The Court should deny the Petition because the Sole Arbitrator violated CMS's right to be heard, as required by article 15(1) Swiss Rules, article 182(3) Swiss International Private Law Act, and US law.

---

[6] In addition, should CMS succeed in its pending appeal to the Swiss Court, a portion of the Award would be set aside "by a competent authority of the country in which, or under the law of which, that award was made," providing another ground upon which this Court could refuse to enforce the Award. Such action by the Swiss Court would likely result in an increased award to CMS that could be offset against the amount awarded to Lafonte that Lafonte seeks to enforce in this Court.

Proper defenses to enforcement of an award include instances in which a party proves that it was unable to present its case. *Generica*, 125 F.3d at 1129. The defense is one of due process in which a party was not afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Accordingly, if the party challenging the award proves that it was not given a meaningful opportunity to be heard as US jurisprudence requires, the award should be denied. *Id.* at 1129-1130. While an arbitrator is not bound by the rules of evidence and is not required to hear all of the evidence propounded by the parties, "when the exclusion of relevant evidence actually deprived a party of a fair hearing … it is appropriate to vacate an award." *Id.* at 1130.

Due process rights are "entitled to full force under the New York Convention as defenses to enforcement." *See Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (citations omitted). Courts generally apply the law of the forum in which recognition of an arbitration award is sought to determine whether a party was denied an opportunity to present its case. *Id. See also, Sonera Holding BV v. Cukurova Holding AS*, 895 F.Supp. 2d 513, 521 (S.D.N.Y. 2012) (denying enforcement of an award under Article V(1)(b) requires a showing that the award "was rendered pursuant to procedures inconsistent with the … standards of due process" applicable in the forum of the enforcement action).

While courts defer to the evidentiary determinations made by arbitrators, this deference is not absolute. Courts will deny enforcement where the determination violates fundamental fairness. *Tempo Shain Corp. v. Bertek, Inc.* 120 F.3d 16, 20 (2d Cir. 1997) (award vacated under § 10(a)(3) of the FAA because arbitrators had "no reasonable basis" to determine that "omitted testimony would be cumulative with regard to the fraudulent inducement claims"); *Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.

1985) (vacation of award affirmed where arbitrator refused to ascribe any weight to testimony that was "unquestionably relevant" and "central and decisive" to the offering party's position, essentially destroying that party's right to present its case.).

The Sole Arbitrator violated CMS's due process rights by refusing to consider pertinent and material evidence of amounts owed to it by Lafonte under the ███████████████████ ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████ Clearly, the Sole Arbitrator's faulty reasoning violated CMS's due process rights and is likely to result in a substantial alteration of the Award in favor of CMS, warranting denial of the Petition at least until the Swiss Court determines the pending appeals.

Recognizing and enforcing the Award that violates CMS's due process rights while appeals involving due process violations are pending will effectively deny CMS's contractual right to have its disputes decided under the Swiss Rules and through the Swiss Arbitration process – including the express provisions governing appeals. Accordingly, the Petition should be denied, without prejudice, until the pending appeals are resolved.

### 3. Recognition and Enforcement of the Award is Contrary to US Public Policy

13

An arbitration award will not be enforced if it would "violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969, 974 (2d Cir. 1974) (citations omitted); Albert Jan van den Berg, The New York Convention of 1958, An Overview, at 19 (refusal to enforce an award under Article V(2)(b) is warranted if enforcement would violate a forum state's international public policy); Gary B. Born, International Commercial Arbitration 3956 (Kluwer Law International, 2d ed. 2014) (a majority of commentators approve applying the forum state's international public policy when reviewing an arbitral award on Article V(2)(b) grounds).[7]

As established above, Evgeny Zubitskiy, who controls Lafonte, has been sanctioned by the EU and Switzerland due to his Kremlin ties and financial support to Russia. Ukraine has pleaded for Lafonte's purported owner, Alina Zubiskaya, to be sanctioned because she is a "Family member of Yevgeny Borisovich ZUBITSKIY, an individual engaged in commercial activities in sectors of the economy that provide a high revenue part of the budget of the Russian Federation, which is responsible for the war in Ukraine, that is, it is a significant source of income for the conduct of the war[.]" *See* https://sanctions.nazk.gov.ua/en/sanction-person/8785/.

It is US policy to support Ukraine and impose financial sanctions on Russia and its collaborators due to Putin's unjustified attack on Ukrainian sovereignty. *See* https://www.state.gov/united-with-ukraine/. As succinctly stated by Secretary of State Anthony J. Blinken, the US policy is: "Help Ukraine defend itself. Support the Ukrainian people. Hold Russia

---

[7] CMS is aware of cases from outside this Circuit where courts have determined that US public policy is not the equivalent of US foreign policy for purposes of the Convention. *See, e.g.*, *The Ministry of Defense and Support for the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 655 F.3d 1091 (9th Cir. 2011). Given that the person in control of the family of companies, including Lafonte, at issue here is personally subject to economic sanctions and is known to be financially supporting Russia's invasion of Ukraine, CMS believes the facts of this case to be more compelling than the circumstances in other cases where a foreign company not personally subject to economic sanctions sought to enforce an award. Moreover, CMS has not located cases in this Circuit in which the public policy exception was held not to apply where the basis of such exception is the petitioner being subject to economic sanctions.

accountable." *Id.* Allowing Putin's pig iron oligarch to use the US legal system to enforce the Award against CMS, a US company, is antithetical to US public policy. Allowing Zubitskiy/Lafonte to take US dollars to support Russia, which will in turn, finance the war in Ukraine is antithetical US public policy.

Accordingly, because recognition and enforcement of the portion of the Award sought by Lafonte violates US public policy and any amounts owed by CMS under the Award could be subject to offset if CMS succeeds in its pending appeal, the Petition must be denied or dismissed.

### B. Alternatively, This Court Must Stay This Civil Action Pending Resolution Of The Appeals Initiated By Both Parties At The Seat Of Arbitration

Lafonte owes CMS millions of dollars under the Award that it has yet to and cannot be trusted to pay. Depending on the outcome of CMS's appeal, the amount owed to CMS could significantly increase. If the Court is not inclined to dismiss the Petition, a stay is necessary to prevent Lafonte from taking CMS's money before it fulfills its obligations to CMS—a final number that will not be known until the conclusion of the Swiss proceedings.

Article VI of the Convention provides that, "[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award…." Under Article V(1)(e), enforcement of an award may be refused where the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

The seminal case addressing the exercise of a court's discretion to stay proceedings is *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998). In that case, the Second Circuit stated "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by

enforcing the award prior to the completion of the foreign proceedings." *Id.* at 317. The Court set forth a non-exhaustive list of factors to be considered in balancing the interest in enforcing arbitration awards with the concerns of international comity: (i) the general objectives of arbitration to expeditiously resolve disputes and avoid protracted and expensive litigation; (ii) the status of the foreign proceedings and estimated time for those proceedings to be resolved; (iii) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review; (iv) the characteristics of the foreign proceedings, including whether they were brought to enforce an award (weighing in favor of a stay) or to set aside the award (favoring enforcement), whether they were initiated before the enforcement proceeding so as to raise international comity concerns, whether they were initiated by the party now seeking to enforce the award in federal court, and whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute; (v) a balance of possible hardships to each party, keeping in mind that under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country; and (vi) any other circumstances that could tend to shift the balance in favor of or against adjournment. *Id.* at 317-18. The first and second factors weigh more heavily in the court's determination whether to issue a stay. *Id.* at 318.

Courts in this District have utilized and applied the *Europcar* factors and reasoning. *See Petrof, Spol.S.R.O. v. Geneva Int'l Corp.*, No. 07-C-7218, 2009 WL 10742090, at *1 (N.D.Ill. Jan. 7, 2009) (staying enforcement proceedings pending appeal of award in the Czech Republic); *Girassol v. Lumbermens Mut. Cas. Co.*, No. 04 C 7731, 2005 WL 947126, at *2 (N.D. Ill. Apr. 12, 2005). Application of the *Europcar* factors in this case overwhelmingly favors a stay.

16

Initially, Article VI of the Convention applies here where the pending appeals have been made to the Swiss Court – a "competent authority of the country in which, or under the law of which, that award was made." Convention Art. V(1)(e). "Competent authority" generally refers to "a court having jurisdiction to entertain an action for setting aside in the country of origin." Albert Jan van den Berg, The New York Convention of 1958: An Overview, p. 17. *See also Hardy Exploration & Production (India), Inc. v. Government of India, Ministry of Petroleum and Natural Gas*, 314 F.Supp.3d 95, 103-104 (D.D.C. 2018). Obviously, the Swiss Court is a "competent authority" under Article VI of the Convention, given that it has exclusive jurisdiction over an appeal against an arbitral award issued by an arbitral tribunal or a sole arbitrator seated in Switzerland. Article 191, Swiss International Private Law Act.

### 1. Factor 1: general objectives of arbitration

In this case, the parties contractually agreed that the arbitration process governs their disputes. Dkt. No. 1, Lafonte Petition, Exhibit A, Tab 2, Contract at Article 12.1.

The country in which the arbitration award was made has primary jurisdiction over the award and all other signatory states have secondary jurisdiction to enforce the award. *InterDigital Communications, Inc. v. Huawei Investment & Holding Co., Ltd.*, 166 F.Supp.3d 463, 469 (S.D.N.Y. 2016); *see also*, *Aperture Softward GmbH v. Avocent Huntsville Corp.*, No. 5:14-cv-00211-JHE, 2015 WL 12838967, at *6 (N.D. Ala. Jan. 5, 2015). Accordingly, the courts in the country of the site of arbitration are the courts of primary jurisdiction and "have broader discretion to set aside the award." *Id.*; Convention, Art. V(1)(e). As such, federal courts, recognizing the significance of the appeal proceedings at the seat of the arbitration, routinely stay enforcement proceedings pending the outcome of the appeal. *See Masdar Solar & Wind Cooperatief U.A. v.*

*Kingdom of Spain*, 397 F.Supp.3d 34, 40 (D.D.C. 2019) (collecting cases in which stays were granted pending annulment proceedings pending in the seat of arbitration).

Issuing a stay avoids potentially protracted and expensive litigation that may result if the federal court confirmed an award and the court at the seat of the arbitration subsequently annuls or alters it. *Gretton Ltd. v. Republic of Uzbekistan*, No. 18-1755, 2019 WL 464793, at *4 (D.D.C. Feb. 6, 2019) (holding that a stay will serve the purposes of arbitration by reducing the likelihood of unnecessary and expensive litigation due to ongoing appeal in France); *Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*, No. 04 C 7731, 2005 WL 947126, at *4 (N.D.Ill. Apr. 12, 2005) (staying enforcement proceedings in the US and noting that "[w]aiting for the French court to rule will also likely aid in the avoidance of more expensive additional litigation that could arise"); *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, No. 05-CV-0423, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005).

Not only would a stay under the circumstances of this case likely result in a more efficient and cost-effective process, it would allow the completion of the arbitration process contractually agreed to by the parties.[8] *See, e.g. CP Construction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana*, 578 F.Supp.2d 50, 54 (D.D.C. 2008) (holding that adjournments pending completion of set-aside proceedings are an integral part of such proceedings and are far from being at odds with the nature of arbitration confirmation proceedings).

---

[8] As other Courts have recognized, "the policy favoring arbitration 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 840 (9th Cir. 2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,625 (1985)). CMS and Lafonte contractually agreed to resolve their disputes in accordance with the arbitration clause according to which their disputes shall be resolved in accordance with the Swiss Rules by a sole arbitrator seated in Switzerland. Due to the parties' agreement that the sole arbitrator shall have a seat in Switzerland, the parties agreed to Swiss law as the applicable *lex arbitri*. Swiss law provides that the parties may appeal against an arbitral award of a sole arbitrator seated in Switzerland for limited reasons (see article 190 PILA). Accordingly, the parties' respective appeals to the Swiss Court are nothing more than an exercise of their bargained-for rights under the Contract. To give effect to the Contract, the parties are entitled to have their disputes resolved in accordance with the Swiss Rules and the PILA, including through the appeals process, before this Court considers whether or not to recognize and enforce the Award.

18

Accordingly, the first *Europcar* factor favors a stay pending a resolution of the appeals.

**2.      Factor 2: status of foreign proceedings and estimated time for resolution**

The appeal proceedings in Switzerland were initiated shortly before Lafonte sought recognition and enforcement of the Award; however, those proceedings are subject to specific and efficient timeframes for resolution.  *See* Pfisterer Dec. ¶ 17.  Specifically, according to statistical data, appeal proceedings before the Swiss Court are resolved with within 6-7 months from the date when the appeal is filed (Felix Dasser and Piotr Wójtowicz, "Swiss International Arbitral Awards Before the Federal Supreme Court. Statistical Data 1989-2019", in: Matthias Scherer (ed), ASA Bulletin, 2021, Volume 39 Issue 1, p. 23). *Id.*

This is not a case in which the Award was issued years ago and the appeal proceedings will likely continue for years to come. *See, e.g.*, *Hardy Exploration*, 314 F.Supp.3d at 106 (referencing several cases in which stays were found inappropriate where foreign set-aside proceedings had remained pending for years and appeal proceedings would likely not be completed for several additional years). In cases where a decision from the foreign tribunal is expected within one or two years, courts have found that the second *Europcar* factor favors a stay. *See Gretton Ltd.*, 2019 WL 464793, at *4 (citing several cases in where resolution of foreign proceedings were expected within months or one year and concluding that, considering the lengthy amount of time that the parties have already litigated their disputes, another four months is a comparatively short time to wait).

Based on the historical data of the time frame applicable to Swiss appeals, a stay here pending completion of the appeals process will cause little, if any, delay resolving Lafonte's Petition.  Accordingly, the second *Europcar* factor also favors issuing a stay.

**3.      Factor 3: whether the Award will receive greater scrutiny by the Swiss Court under a less deferential standard of review**

19

"The purpose of this factor is to give deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award." *Aperture Software,* 2015 WL 12838967, at *7 (citing *Europcar* 156, F.3d at 317). Given the concerns of international comity, although the award might receive a similar level of review in the US or Switzerland, the US courts give "no scrutiny at all to whether the award violates [Swiss] public policy"; therefore, deferring to the decision of the court at the seat of arbitration is prudent, particularly where the pending appeal to set aside part of the award involves the Swiss Ordre public. *See Aperture Software*, 2015 WL 12838967, at *7.

The Swiss Court will examine whether CMS's right to be heard and Swiss public policy was violated – which may result in the Award being lifted and the Swiss Court requesting the Sole Arbitrator to reassess the quantum of CMS's BRS claims. Courts have recognized that the possibility that the reviewing court in the seat of the arbitration will set aside the award "weighs mildly in favor of a stay." *See In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.*, 528 F. Supp. 2d 340, 361 (S.D.N.Y. 2007).

As such, this factor weighs in favor of (or is at least neutral regarding) a stay. *In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F.Supp.3d 110, 116 (D.D.C. 2015) (the possibility that the foreign court will set aside the award "weighs mildly in favor of [granting a] stay.").

### 4.      Factor 4: the characteristics of the Swiss proceedings

This factor also weighs in favor of a stay, as both parties have contractually invoked the jurisdiction of the Swiss Court, as the competent appeal authority to decide on the Award issued by the Sole Arbitrator, pursuant to their arbitration agreement in their Contract and there is no

20

evidence that the appeal process was initiated by CMS with an intent to hinder or delay resolution of the parties' dispute.

CMS initiated appeal proceedings in the arbitral seat. As set forth above, this fact tends to favor enforcement under the fourth *Europcar* factor; **however**, as instructed by *Europcar*, the sequence of events is crucial to analyze this factor. *Europcar*, 156 F.3d at 317-18; *see also, Hardy Exploration*, 314 F. Supp.3d at 107 (there are two cases involving the arbitral award – one initiated by India to set aside the award - counseling against a stay - one initiated by HEPI to enforce the award – counseling in favor of a stay – both were filed prior to the filing of this case – counseling in favor of a stay).

Here, Lafonte initiated this case after CMS **and Lafonte** both initiated their appeals with the Swiss Court. The sequence of events here raise serious concerns of international comity, weighing in favor of a stay. *See Europcar*, 156 F.3d at 318 (annulment proceeding "initiated before the underlying enforcement proceeding" can "raise concerns of international comity."); *see also*, *Gretton Ltd.*, 2019 WL 464793, at *5 (a stay is appropriate when foreign proceedings began before the action to enforce the award was filed in district court) (citations omitted); *Higgins v. SPX Corp.*, No. 05-CV-846, 2006 WL 1008677, at *4 (W.D. Mich. Apr. 18, 2006) ("[C]omity and efficient use of judicial resources does strongly favor staying this action to await the decision of the Brazilian courts as to the nullification action.").

Indeed, the parties agreed that their relationship is governed by Swiss law, that the Swiss Rules apply and that the Sole Arbitrator has seat in Geneva, Switzerland, i.e. that Swiss *lex arbitri* and article 176 *et seq*. PILA would govern the arbitration proceeding. The pending appeals involve the application of the PILA – not any application of US law. The issues pending appeal involve

21

the Swiss PILA, the Swiss Rules, and the authority and application of Swiss law by the Swiss arbitrator.

Under these circumstances, the Swiss Court should be permitted to resolve the pending appeals before this Court considers enforcement of the Award. *See DRC, Inc. v. Republic of Honduras*, 774 F.Supp. 2d 66, 74, 76 (D.D.C. 2011) ("the Award was rendered in the Republic of Honduras by Honduran arbitrators under Honduran law"; therefore, the court would be "acting improvidently" to enforce the award before the foreign proceedings were completed); *Petrof*, 2009 WL 10742090, at *1 (same).

Although Lafonte may dispute the merits of CMS's appeal to the Swiss Court (as CMS disputes Lafonte's appeal), CMS did not initiate its appeal with any intent to hinder or delay resolution of the parties' disputes. Indeed, the Sole Arbitrator found that Lafonte was in fact obligated to CMS under the ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████. Dkt. No. 1, Lafonte Petition, Exhibit A, Tab 1, Award at ¶¶ 727, 804, 963. CMS's appeal is far from frivolous. To the contrary the appeal involves significant inconsistencies in the Award that, if successfully resolved, would substantially alter the amounts owed as between the parties. Accordingly, the fourth *Europcar* factor favors issuance of a stay.

### 5. Factor 5: balance of potential hardships

The significant harm to CMS if a stay is not issued significantly outweighs any minor hardship Lafonte would incur if the matter was stayed. The great hardship CMS will suffer if the Award is immediately enforced in the US while the Swiss appeal process plays out is significant. As it stands, per the Award, the parties owe each other significant sums of money. If Lafonte

22

succeeds on its Petition in the US, Lafonte will immediately seek to collect the amounts awarded to it from CMS, while avoiding paying the amount it owes to CMS. Depending on the outcome of the Swiss proceedings, CMS may decide to set-off the amount owed to it (which may be substantially increased) in this Civil Action or collect against Lafonte in Switzerland.

Comparatively, any hardship to Lafonte as the result of a stay is minimal to nonexistent. A stay would merely maintain the status quo for both parties pending completion of the arbitration appeals process – a right bargained for and agreed upon by the parties in their Contract.  This is especially true given that both parties have appealed the Award to the Swiss Court and, based on the nature of the pending appeals, the parties' obligations may be substantially affected by the decision of the Swiss Court, in particular in the event that the Award is lifted and the Swiss Court requests the Sole Arbitrator to reassess the quantum of █████████████████████. This is not a case in which one party owes obligations to the other under the Award and the obligated party is seeking to avoid payment. Rather *both parties* owe obligations to each other as the Award now stands, and *both parties* have appealed from the Award.

As the Court in *Europcar* explained, the court should balance the parties' respective hardships, 'keeping in mind that … under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country." 156 F.3d at 318.

In this case, the parties' business relationship ended several years ago and the amounts sought relate to business transactions dating back six years. Clearly, both parties have had the means to operate their businesses in the ordinary course over the entire arbitration process. Moreover, Lafonte has not alleged that it has or will suffer any financial hardship as a result of not receiving payment from CMS prior to the resolution of the appeals. *See In the Matter of the Arbitration of Certain Controversies Between Getma International and The Republic of Guinea,*

23

142 F.Supp.3d 110, 118 (D.D.C. 2015) (the claim of hardship is belied by Getma's continued existence and, while plaintiff would like and could use the award, there is no evidence plaintiff is suffering substantial harm as a direct result of not having the money) (quoting *Jorf Lasfar Energy,* 2005 WL 3533128, at *4)).

Should the Award be upheld by the Swiss Court or even altered, the Award includes an interest component that is ongoing, thereby compensating the parties for any delay that may result from a stay pending resolution of the appeal process. By contrast, should the Award be recognized and enforced in its current state, there is a very real risk that the Award may be lifted and that the Sole Arbitrator will then significantly alter the Award and that the parties would then incur significant and lengthy additional litigation and unnecessary expense to recover any amounts paid to the other party under the current state of the Award. *See CC/Devas (Mauritius) Ltd. v. Republic of India*, No. 1:21-CV-106, 2022 WL 873620, at *7 (D.D.C. (Slip Copy) March 24, 2022) (finding the fifth and sixth *Europcar* factors relating to hardships and other circumstances favor a stay due to the potential of litigating the same issues simultaneously in multiple forums and any ruling on enforcement of the award could be undone if the foreign court ultimately set aside the awards. The interest of judicial economy, international comity and potential hardships militate toward a stay under the Court's inherent powers and the *Europcar* factors).

Accordingly, the fifth *Europcar* factor favors a stay of this Civil Action.

### 6. Factor 6: other considerations

In this case, both parties appealed from the Award before Lafonte initiated this enforcement action.  Importantly, Lafonte is simultaneously seeking a stay of enforcement in Switzerland as to its obligations to CMS.  While CMS believes grounds exist to dismiss the Petition in this case, at

a minimum a stay that maintains the status quo is warranted under the *Eurpocar* factors until the pending appeals in Switzerland are concluded.

## IV.    CONCLUSION

For the foregoing reasons, CMS urges the Court to deny or dismiss the Petition. Alternatively, CMS requests a stay pending the conclusion of the appeals process in Switzerland, the outcome of which could materially and significantly alter the parties' obligations under the Award.  CMS respectfully requests oral argument on its opposition to the Petition and its request for a stay.

Dated:  June 28, 2022                                        Respectfully submitted,

CONSOLIDATED MILL SUPPLY, INC.

By:     */s/ Thomas P. Cimino, Jr.*
        One of Its Attorneys

        Thomas P. Cimino, Jr., Bar No. 06195940
        Zachary J. Watters, Bar No. 6310675
        VEDDER PRICE P.C.
        222 North LaSalle Street
        Chicago, Illinois  60601
        Telephone:  (312) 609-7500
        tcimino@vedderprice.com
        zwatters@vedderprice.com


        Mark A. Schiavo
        Anne Marie Aaronson
        Benjamin S. Teris
        DILWORTH PAXSON LLP
        457 Haddonfield Road, Suite 700
        Cherry Hill, NJ  08002
        Telephone:  (856) 675-1978
        mschiavo@dilworthlaw.com
        bteris@dilworthlaw.com
        aaronson@dilworthlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, I electronically filed the foregoing RESPONDENT CONSOLIDATED MILL SUPPLY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS/OPPOSITION TO LAFONTE COMMERCE SA'S PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRATION AWARD AND, ALTERNATIVELY, IN SUPPORT OF MOTION TO STAY THIS CIVIL ACTION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Thomas P. Cimino, Jr.*
Thomas P. Cimino, Jr.