UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAFONTE COMMERCE SA, | |
| Petitioner, | No. 22 C 2695 |
| v. | Judge Thomas M. Durkin |
| CONSOLIDATED MILL SUPPLY, INC., | |
| Respondent. | |

MEMORANDUM OPINION AND ORDER

Lafonte Commerce SA seeks recognition and enforcement of a portion of an arbitration award against Consolidated Mill Supply, Inc. ("CMS") that was rendered in Geneva, Switzerland. CMS has filed a motion seeking denial of the petition or a stay in the alternative. The motion to stay is granted in accordance with this order.

**Background**

Lafonte is a Swiss company that sells pig iron.[1] CMS is an Illinois corporation that for many years bought pig iron from Lafonte to resell in the United States.

The arbitration arose from a contract dispute. In a 152-page decision, the arbitrator ordered CMS to pay Lafonte $7.5 million plus interest, and Lafonte to pay CMS $2.479 million. *See* R. 8 at 152.

---

[1] Steel is produced by mixing iron and carbon at high temperatures. To do this, iron must first be extracted from its ore through a melting process. Sometimes the melted ore is directly combined with carbon in an integrated steel factory. In other cases, the melted iron is cooled into ingots that can be shipped. These ingots are called "pig iron." *See* https://www.metallics.org/pig-iron.html; https://www.reliance-foundry.com/blog/how-is-steel-made; https://en.wikipedia.org/wiki/Smelting.

CMS has appealed the arbitration award in Swiss court. But CMS's appeal does not seek to reverse the $7.5 million award to Lafonte. *See* R. 25 at 7, 9 (CMS's brief explaining that its appeal "seeks to set aside dispositive Award paragraphs (ii), (iv), (v) and (vi)," but not paragraph (i) containing the $7.5 million award to Lafonte). Rather, the appeal primarily seeks to increase the $2.479 million award to CMS by $1.3 million. *See* R. 31-1 ¶¶ 81, 108. CMS does not dispute this characterization of its appeal. *See* R. 32 at 2 (CMS's reply brief conceding "the fact that CMS will still owe Lafonte money if CMS's appeal is successful"); R. 25 at 10 (CMS's brief stating that "if CMS's appeal is granted, the Swiss Court will set aside the Award and request the Sole Arbitrator revisit the amount owed by Lafonte to CMS[.]"). The appeal is pending, with CMS predicting a resolution by December 2022. *See* R. 32 at 7.

## Analysis

### I. Recognition

Pursuant to 9 U.S.C. § 201, the "New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . shall be enforced in United States courts." "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* Article V of the Convention provides grounds for refusing to recognize an award.

CMS argues that the Court should deny the petition to recognize the award based on two grounds in Article V: (1) CMS was "unable to present [its] case"; and (2) the "recognition or enforcement of the award would be contrary to . . . public policy." *See* Article V(1)(b), V(2)(b). Specifically, CMS argues that it was unable to present its case because the arbitrator "refus[ed] to consider pertinent and material evidence of amounts owed to it by Lafonte." R. 25 at 13. Additionally, CMS alleges that Lafonte is a front for Russian businessperson, Evgeny Zubitskiy, who allegedly will use the proceeds of the award to fund Russia's war in Ukraine.

A. **Due Process**

Article V(1)(b) provides that recognition and enforcement of an award "may be refused" upon proof that the "party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." The Seventh Circuit has explained that the requirement that a party be able to "present their case" calls for "a meaningful opportunity to be heard as our due process jurisprudence defines it." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129-30 (7th Cir. 1997). CMS does not contend that they were not given notice of the proceedings or that they were denied the opportunity to participate. Rather, CMS contends that they were unable to present their case in that the arbitrator refused to consider material evidence in a manner that violated "fundamental fairness." *See* R. 25 at 12.

The problem with CMS's argument is that they do not actually contend that the arbitrator prevented CMS from presenting certain evidence. Rather, CMS argues

3

that the arbitrator "ignored" evidence resulting in "faulty reasoning." R. 25 at 13. At most, this is appealable error. It does not rise to the level of a due process violation.

Moreover, CMS explains that the arbitrator's alleged error "is likely to result in a substantial alteration of *the award in favor of CMS*, warranting denial of the Petition at least until the Swiss Court determines the pending appeals." R. 25 at 13 (emphasis added). In other words, similar to its argument on appeal, CMS apparently concedes that the arbitrator's alleged error is relevant only to the amount Lafonte owes CMS and does not undermine the $7.5 million award to Lafonte. Because Lafonte seeks recognition of the part of the award in its favor, even if the Court were to agree that the arbitrator's alleged error constituted a due process violation, that error is not relevant to the award Lafonte seeks to enforce. *See* R. 1 at 5 (complaint in this case seeking an order regarding only the money owed to Lafonte). Thus, CMS's due process argument is not a reason to deny recognition and enforcement of the award in Lafonte's favor.[2]

### B. Public Policy

The Court may also refuse to recognize an award if doing so would be contrary to public policy. Lafonte is owned by Alina Zubitskaya, whose father is Evgeny Zubitskiy. According to CMS, Zubitskiy owns a company called Industrial Metallurgical Holding. CMS alleges that "Lafonte is a shell company used to sell IMH products internationally." R. 25 at 2. CMS alleges further that Zubitskiy has close

---

[2] CMS does not argue that recognition of the award prior to resolution of the appeal will prevent CMS from enforcing a greater judgment against Lafonte should CMS's appeal be successful.

ties to the Russian government, and that payments to Lafonte will be used to fund Russia's war in Ukraine, contrary to U.S. foreign policy.

To the extent any of these allegations are true—and the Court is in no position to make any such findings—the "Second Circuit has held that a violation of United States foreign policy does not contravene public policy as contemplated in Article V of the Convention." *See MGM Productions Group, Inc. v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 776 (S.D.N.Y. 2003), *aff'd*, 91 Fed. Appx. 716 (2d Cir. 2004). In *MGM*, the court recognized an arbitration award despite the argument that payments to the petitioning party would violate United States sanctions against Iran. The court in *MGM* reasoned that if "foreign policy" were a basis to deny recognition of arbitration awards, courts will become weapons in international disputes, thereby risking the ability of U.S. companies to enforce judgments in non-U.S. courts. *See MGM*, 573 F. Supp. 2d at 777 ("Public policy arguments, such as those presented here, should be accepted with caution, so as not to discourage enforcement of United States arbitration awards by courts of other countries.").

In any case, CMS has presented no evidence that Lafonte, its owner, or even Evgeny Zubitskiy have been sanctioned by the United States. CMS cites a pro-Ukraine organization that advocates that the United States *should* sanction Lafonte and these individuals. *See* R. 25 at 14. CMS also cites evidence of Zubitskiy's close relationships with both the Russian government and Lafonte. *See id.* at 2-4. But of course, this Court does not establish U.S. foreign policy and does not have the power to sanction any party for anything other than litigation conduct. Rather than support

their argument that payments to Lafonte would violate U.S. foreign policy, the evidence CMA cites establishes that neither Lafonte, its owner, nor even Zubitskiy have been sanctioned by the United States government. And if they have not been sanctioned, this Court cannot say that payments to any of them would violate U.S. foreign policy, let alone public policy.

In its most recent filing, CMS alerted the Court to the Swiss appellate court's refusal to order CMS to post a bond in the appeal on the chance that such payment would violate Swiss sanctions. *See* R. 34; R. 36. Like the other evidence on this issue submitted by CMS, it is evidence that the war in Ukraine has complicated some international legal and business transactions. It is not evidence of current U.S. foreign or public policy that is relevant to analysis under the Convention. Thus, the Court cannot find that a payment to Lafonte would violate any public policy, and it is not a reason to deny recognition and enforcement of the award in Lafonte's favor.

**II. Stay**

Alternatively, CMS argues that the Court should stay the petition pending resolution of the appeal. CMS contends that "a stay is necessary to prevent Lafonte from taking CMS's money before it fulfills its obligations to CMS." R. 25 at 15.

Where "a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 317 (2d Cir.

6

1998). Following the Second Circuit's decision in *Europcar*, district courts apply the following factors in determining whether a stay is appropriate:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country . . . ; and
> (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Id.* at 317-18.

The Swiss court, similar to this court, will apply a deferential standard of review on appeal. Further, as discussed, the appeal does not concern the award to Lafonte, and so will not change that amount in particular.

Nevertheless, this petition is undeniably an aspect of the same underlying dispute at issue in the appeal and the parties' efforts to collect money from each other.

7

While the two awards were rendered separately, they certainly off-set. Any decision by the Swiss appellate court increasing the award to CMS will correspondingly decrease the amount of money CMS must pay to Lafonte. The appeal in Switzerland was filed before this petition, and the only evidence before the Court regarding the time to decision is that the Swiss court should issue a decision this December or within a few months thereafter. Immediate enforcement of Lafonte's award, before the appeal is decided, will likely give Lafonte an undue advantage in collecting on the dueling awards. According to CMS, and without denial by Lafonte, this dispute is six-years-old and the amount of money at issue is not significantly material to the business of either party. Lafonte of course would like to be paid sooner rather than later, but Lafonte does not contend that it will suffer any prejudice from waiting for the Swiss appellate court's decision.

Moreover, any risk inherent in delay can be remedied by posting the amount at issue as a security bond. Roughly speaking, the amount at issue here is the difference between the awards of $7.5 million to Lafonte and $2,479,630.66 to CMS. Lafonte calculated the interest on each award and asks that it be included in the security. *See* R. 31-1. But CMS did not respond to Lafonte's interest calculation, and the Court is reluctant to include those amounts in a security bond without greater certainty as to their accuracy. Furthermore, the purpose of a security bond is to limit potential losses during the stay. It is not to guarantee complete recovery. For these reasons the Court orders that CMS post a security bond of the difference between $7.5 million and $2,479,630.66, which equals roughly $5 million.

## Conclusion

CMS's motion [24] is denied in part and granted in part. CMS's motion to deny Lafonte's petition is denied. CMS's motion to stay recognition and enforcement of the award while the Swiss appeal is pending is granted. CMS is ordered to post a surety bond of $5 million by October 28, 2022. The parties should file a status report by January 20, 2023 or when the Swiss appellate court issues a decision, whichever comes first.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: October 20, 2022